AF Approval _____ NA

Chief Approval _____

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**FILED IN OPEN COURT**
5/15/24
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES OF AMERICA

v.                                              CASE NO. 3:23-cr-47-WWB-LLL

JAMES DARRELL HICKOX

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Roger B. Handberg, United States Attorney for the Middle District of Florida,

and the defendant, James Darrell Hickox, and the attorney for the defendant,

Daniel A. Smith, mutually agree as follows:

### A.   Particularized Terms

1.   Counts Pleading To

The defendant shall enter a plea of guilty to Counts Three, Eight,

and Eleven of the Superseding Indictment. Count Three charges the

defendant with Conspiracy to Defraud the United States, in violation of 18

U.S.C. § 371. Count Eight charges the defendant with Tax Evasion, in

violation of 26 U.S.C. § 7201. Count Eleven charges the defendant with

Conspiracy to Possess with Intent to Distribute Controlled Substances (500+

Defendant's Initials 

grams of cocaine, 40+ grams of fentanyl, 100+ kilograms of marijuana, and MDMA), in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B) and (C).

    2.    <u>Minimum and Maximum Penalties</u>

Count Three is punishable by up to five years of imprisonment, a fine of up to $250,000, a term of supervised release of up to 3 years, and a special assessment of $100. Count Eight is punishable by up to five years of imprisonment, a fine of up to $250,000, a term of supervised release of up to 3 years, and a special assessment of $100. Count Eleven is punishable by a **mandatory minimum** term of imprisonment of five years up to forty years, a fine of up to $5 million, a term of supervised release of at least 4 years up to life, and a special assessment of $100. Though not required to do so, the Court may impose these sentences consecutively. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

    3.    <u>*Alleyne v. United States and Apprendi v. New Jersey*</u>

Under *Alleyne v. United States*, 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the defendant is subject to a mandatory minimum sentence of five years of imprisonment and a maximum sentence of

Defendant's Initials ____        2

forty years of imprisonment as to Count Eleven because the following facts have been admitted by the defendant and are established by this plea of guilty: The defendant conspired to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, and 100 kilograms or more of a mixture and substance containing a detectable amount of marijuana.

4.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count Three are:

First:    Two or more people in some way agreed to try to accomplish a shared and unlawful plan;

Second:    The Defendant knew the unlawful purpose of the plan and willfully joined in it;

Third:    During the conspiracy, one of the conspirators knowingly engaged in at least one overt act described in the indictment; and,

Fourth:   The overt act was knowingly committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

The elements of Count Eight are:

First:   The Defendant owed substantial income tax in addition to the amount declared on his tax return;

Second:   The Defendant intended to evade or defeat the assessment or payment of this tax; and,

Third:   The Defendant willfully committed an affirmative act in furtherance of this intent.

The elements of Count Eleven are:

First:   Two or more people (including the Defendant) in some way agreed to try to accomplish a shared and unlawful plan, the object of which was the distribution or possession with the intent to distribute of controlled substances;

Second:   The Defendant knew the unlawful purpose of the plan and willfully joined in it.

Third:   The object of the conspiracy was to possess with intent to distribute 500 grams or more of a mixture

Defendant's Initials _DP_                4

and substance containing a detectable amount of cocaine, 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, 100 kilograms or more of a mixture and substance containing a detectable amount of marijuana, and MDMA.

5.    Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts One, Four, Five, Six, Nine, and Ten, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

6.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

7.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the

Defendant's Initials _____                    5

defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.    Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to

Defendant's Initials _____                6

prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has

Defendant's Initials _____

7

been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.    Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

10.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

Defendant's Initials _____          8

11.   Cooperation - Responsibilities of Parties

a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

Defendant's Initials _____                    9

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

12.     Taxes - Payment and Cooperation

The defendant agrees to pay all taxes, interest, and penalties found to be lawfully owed and due to the Internal Revenue Service for the years 2020 through and including 2022, and to cooperate with and provide to

Defendant's Initials _____          11

the Internal Revenue Service any documentation necessary for a correct computation of all taxes due and owing for those years, and further agrees that the Court may make this term a condition of any sentence of probation or supervised release.

103.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 21 U.S.C. § 853, whether in the possession or control of the United States, the defendant or defendant's nominees.

The assets to be forfeited specifically include, but are not limited to, the following: the $421,218.61 in proceeds the defendant admits he obtained as the result of his participation in the commission of the drug conspiracy to which the defendant is pleading guilty, as well as:

1.)   approximately $195,036 in U.S. Currency seized from the defendant's residence on March 10, 2023;

2.)   $26,740.00 from Vystar Credit Union account number 7900518201 held in the name of Darrell Hickox and/or Laura M. Hickox;

3.)   $6,493.56 from Vystar Credit Union account number 7200060498 held in the name of Darrell Hickox and/or Laura M. Hickox;

4.)   $8,934.57 from Vystar Credit Union account number 7200060509 held in the name of Stella Grace Hickox and/or Darrell Hickox;

      5.)    $2,346.12 from Wells Fargo Bank account number
             1010028352606 held in the name of James D. Hickox; and

      6.)    $1,225.79 from Wells Fargo Bank account number
             3000066304637 held in the name of James D. Hickox,

which the defendant admits were proceeds the defendant obtained from his

participation in the charged drug conspiracy.[1] The net proceeds from the

forfeiture and sale of any specific assets will be credited to and reduce the

amount the United States shall be entitled to forfeit as substitute assets

pursuant to 21 U.S.C. § 853(p).

      The defendant further agrees to the administrative forfeiture of the

following firearms seized from his residence on March 10, 2023: one Smith &

Wesson handgun, one Masterpiece Arms handgun, two Springfield Armory

handguns, and JMAC Custom rifle. The JMAC Custom rifle was involved in

the offense charged in Count Five of the Superseding Indictment, while the

remaining firearms were involved in the offense charged in Count Four of the

Indictment. The defendant agrees that this provision provides him with actual

notice of the administrative forfeiture of these assets, and waives the right to

receive notice of any subsequent administrative forfeiture of these assets.

---

[1] The defendant further admits that neither his spouse or children are bona
fide purchasers for value of the above-referenced funds because they did not
provide fair market value for any legal interest they may have in the above-
referenced funds.

Defendant's Initials ⟨initials⟩      13

The defendant acknowledges and agrees that: 1) the defendant obtained $421,218.61 as a result of his participation in the commission of the drug conspiracy and 2) as a result of the acts and omissions of the defendant, the proceeds not recovered by the United States through the forfeiture of the directly traceable assets listed herein have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offenses of conviction and, further, the defendant consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offenses and consents to the entry of the forfeiture order into the Treasury Offset Program.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule

Defendant's Initials _____                14

32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence and the United States shall not be limited to the forfeiture of the substitute assets, if any, specifically listed in this plea agreement.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time

Defendant's Initials _____                    15

it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the

Defendant's Initials ⟍⟋⟍                16

defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

Defendant's Initials _____     17

## ✗14.   Abandonment of Property

Defendant acknowledges that he has an ownership interest in the firearms listed in "Attachment A," as well as: one Smith & Wesson handgun, one Masterpiece Arms handgun, two Springfield Armory handguns, and one JMAC Custom rifle, which were all seized from the defendant's residence on or about March 10, 2023.

Defendant understands that he has the right and opportunity to claim the listed property. Defendant hereby knowingly and voluntarily waives all right, title, and interest in the listed property. Defendant waives, releases, and withdraws any claim that Defendant has made with respect to the listed property, and waives and releases any claim that Defendant might otherwise have made to the listed property in the future.

Defendant consents to the vesting of title to the listed property to the United States Government, pursuant to Title 41, Code of Federal Regulations, Section 128-48.102-1. Defendant also consents to the destruction of the property, or other disposition of the property in accordance with law, and without further notice to defendant.

Defendant waives any right Defendant might otherwise have had to receive notice or a hearing with respect to any motion, pleading, order, or any other action that the Government might take, in its sole discretion, to

carry out the abandonment, disposition, and/or destruction of the listed property. Defendant's waiver includes, without limitation, all common law, statutory, and constitutional claims or challenges, on any grounds, arising at any time from, or relating to, the seizure, abandonment, disposition, and destruction of the listed property, including any such claim for attorney's fees and litigation costs.

Defendant further agrees to hold the United States of America, its agents and employees, harmless from any claims whatsoever in connection with the seizure, abandonment, disposition, and destruction of the listed property.

## B.    **Standard Terms and Conditions**

### 1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further

Defendant's Initials ___  19

understands that compliance with any restitution payment plan imposed by

the Court in no way precludes the United States from simultaneously pursuing

other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)),

including, but not limited to, garnishment and execution, pursuant to the

Mandatory Victims Restitution Act, in order to ensure that the defendant's

restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court

shall impose a special assessment pursuant to 18 U.S.C. § 3013.  To ensure

that this obligation is satisfied, the Defendant agrees to deliver a cashier's

check, certified check, or money order to the Clerk of the Court in the amount

of $300, payable to "Clerk, U.S. District Court" within ten days of the change

of plea hearing. The defendant understands that this agreement imposes no

limitation as to fine.

    2.    Supervised Release

The defendant understands that the offense(s) to which the

defendant is pleading provide(s) for imposition of a term of supervised release

upon release from imprisonment, and that, if the defendant should violate the

conditions of release, the defendant would be subject to a further term of

imprisonment.

    3.    Immigration Consequences of Pleading Guilty

Defendant's Initials _____        20

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete,

Defendant's Initials ⟋⟍⟋⟍          21

accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence

Defendant's Initials _____        22

report prepared by the United States Probation Office. The defendant

understands and acknowledges that, although the parties are permitted to

make recommendations and present arguments to the Court, the sentence will

be determined solely by the Court, with the assistance of the United States

Probation Office. Defendant further understands and acknowledges that any

discussions between defendant or defendant's attorney and the attorney or

other agents for the government regarding any recommendations by the

government are not binding on the Court and that, should any

recommendations be rejected, defendant will not be permitted to withdraw

defendant's plea pursuant to this plea agreement. The government expressly

reserves the right to support and defend any decision that the Court may make

with regard to the defendant's sentence, whether or not such decision is

consistent with the government's recommendations contained herein.

    7.    Defendant's Waiver of Right to Appeal the Sentence

        The defendant agrees that this Court has jurisdiction and

authority to impose any sentence up to the statutory maximum and expressly

waives the right to appeal defendant's sentence on any ground, including the

ground that the Court erred in determining the applicable guidelines range

pursuant to the United States Sentencing Guidelines, except (a) the ground

that the sentence exceeds the defendant's applicable guidelines range as

Defendant's Initials _____        23

determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.   Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon

Defendant's Initials _____     24

any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The

Defendant's Initials _____        25

defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

    11.    Factual Basis

        Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

    12.    Entire Agreement

        This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

    13.    Certification

        The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

        DATED this _22nd_ day of April, 2024.

Defendant's Initials _____        26

ROGER B. HANDBERG
United States Attorney

James Darrell Hickox
Defendant

William S. Hamilton
Assistant United States Attorney

Daniel A. Smith
Attorney for Defendant

Robert E. Bodnar, Jr.
Assistant United States Attorney
Chief, Ocala Division

Defendant's Initials _____

27

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 3:23-cr-47-WWB-LLL

JAMES DARRELL HICKOX

## PERSONALIZATION OF ELEMENTS

## COUNT THREE

First:      Do you admit that, beginning no later than January 1,

2021 and continuing through on or about March 10, 2023,

and within the Middle District of Florida, that you and at

least one other person (including co-defendant Joshua

Grady Earrey) in some way agreed to try to accomplish a

shared and unlawful plan to defraud the United States of

its right to the conscientious, loyal, faithful, and unbiased

services and performance of their official duties?

Second:   Do you admit that you knew the unlawful purpose of the

plan and willfully joined in it?

Defendant's Initials           28

Third:    Do you admit that, during the conspiracy, you knowingly engaged in at least one overt act described in the indictment?

Fourth:    Do you admit that you committed the overt act knowingly, at or about the time alleged in the indictment, and with the purpose of carrying out or accomplishing an object of the conspiracy?

COUNT EIGHT

First:    Do you admit that a substantial income tax was due and owing in addition to that declared on your calendar year 2020 income tax return?

Second:    Do you admit that you intended to evade or defeat the assessment and payment of this tax?

Third:    Do you admit that you willfully committed an affirmative act in furtherance of this intent, namely, by intentionally omitting the additional income from your 2020 income tax return?

Defendant's Initials _____      29

## COUNT ELEVEN

First:    Do you admit that, beginning no later than January 1,

2021, and continuing through on or about March 10, 2023,

in the Middle District of Florida, that you and at least one

other person (including co-defendant Joshua Grady

Earrey) in some way agreed to try to accomplish a shared

and unlawful plan to possess with intent to distribute 500

grams or more of a mixture and substance containing a

detectable amount of cocaine, 40 grams or more of a

mixture and substance containing a detectable amount of

fentanyl, 100 kilograms or more of marijuana, and

MDMA?

Second:    Do you admit that you knew the unlawful purpose of the

plan and willfully joined in it?

Third:    Do you admit that you intended to distribute the

controlled substances described above?

Defendant's Initials _____    30

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                         CASE NO. 3:23-cr-47-WWB-LLL

JAMES DARRELL HICKOX

### FACTUAL BASIS

While committing the criminal activity outlined in this factual basis

below, the defendant, James Darrell Hickox, was employed as a Detective or

Sergeant with the Nassau County Sheriff's Office (NCSO) and was also

deputized as a Drug Enforcement Administration (DEA) Task Force Officer

(TFO). NCSO is located in Yulee, Florida, within the Middle District of

Florida. As a DEA TFO, Hickox was a federal law enforcement officer

assigned to the Jacksonville District Office of the Miami Field Division which

is located in Jacksonville, Florida, within the Middle District of Florida. In

the course of his duties in both positions, the defendant performed narcotics

investigations and was routinely involved in interviews, traffic stops, arrests,

search warrants and other activity which resulted in the seizure of currency,

firearms, and controlled substances such as cocaine, heroin, fentanyl, and

marijuana.

Defendant's Initials           31

## DIVERSION AND THEFT OF SEIZED CURRENCY

On an unknown date (but no later than April of 2017), the defendant began stealing U.S. currency from currency seized as part of DEA investigations. The defendant stole and diverted currency from evidence bags before they were sealed during seizures or stole and diverted currency from sealed evidence bags following seizures. The defendant broke into the evidence bags, removed portions of the currency, and re-sealed the evidence bags or repackaged the remaining seized currency into substitute evidence bags which had previously been prepared for this purpose.

In addition to his personal conduct, at times, the defendant also conspired with another law enforcement officer and fellow DEA TFO, co-defendant Joshua Grady Earrey, to commit this activity. On or about May 31, 2022, the defendant and co-defendant participated in a joint operation by DEA and the Florida Highway Patrol (FHP) where DEA seized in excess of $75,000 in cash in Duval County, Florida. Per normal procedures, the defendant placed the seized currency in an evidence bag and sealed the bag on the premises, but the defendant had a second evidence bag pre-prepared and listed the serial number from the second evidence bag on the official seizure receipt and reports. Following the law enforcement operation and before submitting the seized currency into DEA evidence storage, the defendant and

Defendant's Initials _____        32

co-defendant cut open the evidence bag containing the seized currency, stole approximately $15,000 from inside, repackaged the remaining currency in the pre-prepared second evidence bag, and submitted it to DEA evidence storage. The co-defendant then knowingly and falsely under-reported the amount of currency seized on a DEA-6 law enforcement report that he authored documenting the seizure.

On or about November 3, 2022, the co-defendant participated in the execution of a search warrant at the residence of an individual named B.D. where approximately $35,000 in cash was seized. Per proper procedures, the seized currency was placed in a sealed evidence bag, signed by the two federal agents participating in the search, and placed in DEA evidence storage to await transport for an official money count at a private cash-handling and transit company located in Jacksonville, Florida. On or about November 9, 2022, the co-defendant checked out the seized currency for an official money count. Prior to arriving at the cash-handling facility for the official money count, the defendant met with the co-defendant and cut open the evidence bag containing currency. The defendants stole approximately $4,000 from the evidence bag. The defendant attempted to reseal the original evidence bag with a heat sealer. The co-defendant ultimately repackaged the currency in a second evidence bag and forged the signatures of the two federal agents who

Defendant's Initials _____        33

had signed the original evidence bag. The co-defendant submitted the second evidence bag for the official money count and then knowingly and falsely under-reported the amount of currency seized on a DEA-6 law enforcement report that he authored documenting the seizure.

## DIVERSION AND THEFT OF SEIZED DRUGS

On an unknown date (but no later than April 2017) the defendant first stole drugs from evidence seized as part of a DEA investigation. The purpose of the defendant stealing the drugs was to use other individuals to sell the stolen drugs and to profit from the sale proceeds of the drugs.

The defendant stole and diverted drugs including marijuana, cocaine, heroin, fentanyl, and other controlled substances, which had been seized as part of official law enforcement operations. The defendant targeted seized drug evidence from investigations which were not going to be prosecuted and therefore the drug evidence was designated for destruction.

## DIVERSION OF SEIZED MARIJUANA

The defendant targeted marijuana for diversion since it was a target of opportunity because once it was seized, it was not usually sent to the DEA lab like other drugs. Rather, the marijuana was stored at local law enforcement property and evidence facilities including NCSO Property and Evidence pending prosecution or destruction.

Defendant's Initials           34

The defendant and co-defendant participated in the following law enforcement seizures of marijuana which were later diverted and sold for their own financial benefit:

On or around November 9, 2021, DEA, including the defendant and co-defendant in their roles as DEA TFOs, performed a traffic stop and search of a storage unit in Jacksonville, FL. The traffic stop and search resulted in the discovery and seizure of approximately 256 pounds of marijuana. On a later unknown date, the marijuana was transported to NCSO Property and Evidence in Yulee, Florida.

On or around May 17, 2022, FHP, along with the defendant and co-defendant in their roles as DEA TFOs, performed a traffic stop in Jacksonville, FL. The traffic stop resulted in the discovery and seizure of approximately 211 pounds of marijuana. On May 17, 2022, the marijuana was seized and transported by defendant and co-defendant to NCSO Property and Evidence in Yulee, Florida.

On or around May 18, 2022, FHP, along with the defendant and co-defendant in their roles as DEA TFOs, performed a traffic stop and search of a storage unit in Jacksonville, FL. The traffic stop and search resulted in the discovery of approximately 238 pounds of marijuana. The marijuana was seized and initially stored at FHP Property and Evidence in Jacksonville,

Defendant's Initials _DJ_                    35

Florida on May 18, 2022. On May 23, 2022, the defendant and co-defendant transported the marijuana to NCSO Property and Evidence in Yulee, Florida.

On or around May 19, 2022, FHP, along with the defendant and co-defendant in their roles as DEA TFOs, performed a search of a freight package in Jacksonville, Florida. The search resulted in the discovery of approximately 332 pounds of marijuana. The marijuana was seized and initially stored at FHP Property and Evidence in Jacksonville, Florida on May 19, 2022. On May 23, 2022, the defendant and co-defendant transported the marijuana to NCSO Property and Evidence in Yulee, Florida.

On or around December 13, 2022, Florida Department of Agriculture Consumer Services (FDACS) Office of Agricultural Law Enforcement (OALE) performed a traffic stop near the OALE inspection station on I-95 southbound. The traffic stop resulted in the discovery of 100 pounds of marijuana and other items including THC vape cartridges. OALE contacted the defendant because he had previously been contacted by OALE and was considered the DEA contact for OALE in Nassau County, Florida. Despite no longer being active as a DEA TFO, the defendant responded to the scene of the traffic stop and also notified a current DEA TFO. The defendant notified NCSO that he was assisting with the stop and stated DEA was taking

Defendant's Initials _____      36

the case. The marijuana was seized and stored at NCSO Property and Evidence in Yulee, Florida.

Additionally, the defendant falsely represented to the DEA or NCSO that the items had been destroyed by preparing and submitting forged certificates of destruction to the agencies.

Under false pretenses that the evidence was being removed to be transported for destruction, the defendant checked out approximately 1,006 pounds of marijuana related to the seizures described above from NCSO Property and Evidence.

In other instances when actual destructions were occurring, the defendant would remove and divert marijuana prior to transporting the drug evidence to the destruction facility. After the marijuana was checked out of evidence, the defendant would divert the marijuana by placing it in his department issued vehicle, his private vehicle, or a van he rented for the purpose of transporting the marijuana. The defendant then provided the marijuana to other individuals in the Jacksonville, Florida area to sell so he could profit from the proceeds. The defendant also provided some of the marijuana to the co-defendant for the co-defendant to sell and profit from the proceeds.

Defendant's Initials               37

In the instances when no actual destruction occurred, the defendant would create false certification of destruction documents purportedly from the private industrial waste facility regularly used by NCSO for evidence destruction. The false documents were created in order to cover up the theft of the marijuana. On these false documents, the defendant forged the signatures of personnel at the private industrial waste facility. The defendant would also attach a false evidence destruction manifest listing the specific drugs destroyed used for evidence destruction as well as the signature of the co-defendant. The defendant provided the false documents to NCSO Property and Evidence personnel as evidence of the destruction.

## DIVERSION OF SEIZED COCAINE

On August 16, 2022, the co-defendant participated in a DEA investigation which resulted in the seizure of a kilo of cocaine. The co-defendant authored the DEA Form 6 and reported the cocaine weighed 1,170 grams with evidence packaging and it was checked into DEA evidence.

After the seizure, the defendant contacted the co-defendant and informed him of a way to swap the kilograms of cocaine for a fake kilo of cocaine. Under the pretense the fake kilograms would be used for law enforcement purposes, the defendant paid a private 3D printing and fabricating business located in Jacksonville, Florida to make approximately 30

Defendant's Initials             38

replica bricks since 2018 that looked and weighed like real kilograms of cocaine. The outside of the bricks were sprayed with glue and sprinkled with real cocaine to make them appear legitimate. The defendant gave the co-defendant one of these fake kilograms of cocaine for the purpose of swapping it with the real kilogram.

On August 17, 2022, the co-defendant checked out the kilogram of cocaine from DEA for shipment to the DEA lab for destruction. The defendant and co-defendant exchanged text messages regarding the weight of the fake kilogram of cocaine and discussed meeting. The defendant informed the co-defendant the weight of the fake kilogram for the co-defendant to mark it on a new evidence bag. Prior to shipping the kilogram to the DEA lab, the co-defendant met with the defendant and swapped the real kilogram with the fake kilogram. The co-defendant labeled the new evidence bag and paperwork with the weight of the fake kilogram and indicated to the DEA lab that no testing was needed. Ultimately, the kilogram was designated for destruction.

The defendant then gave the real kilogram of cocaine to a known drug dealer to sell for him. The cocaine was sold for approximately $20,000 to $23,000. The defendant kept approximately $8,000 to $12,000 and the co-defendant kept approximately $6,000 to $15,000.

Defendant's Initials _____        39

## DRUG TRAFFICKING AND DISTRIBUTION

The defendant used individuals who were initially law enforcement sources or known subjects to traffic and distribute drugs he illegally obtained.

The defendant used a confidential informant (CI-1) in the same manner. CI-1 was originally a target of a DEA investigation but was not charged due to insufficient evidence. The defendant developed a friendship with CI-1 and often used his personal money for CI-1's rent and expenses. The defendant signed up CI-1 as an NCSO source. CI-1 participated in a limited number of official source operations involving drug activity. However, the defendant eventually began providing CI-1 with fentanyl, heroin, cocaine, and marijuana to sell on his behalf, which the defendant had diverted and stolen from law enforcement seizures.

The defendant lied to CI-1 to make the individual believe he/she was providing legitimate law enforcement assistance as a source. CI-1 believed he/she was assisting the defendant in development of new cases.

The defendant gave between 1 and 20 pounds of marijuana to CI-1 on 50 to 75 separate occasions. CI-1 sold the marijuana for $1,000 per pound, gave $600 to $700 per pound to the defendant, and was allowed to keep the remainder. The defendant told CI-1 the money was his/her source payment.

Defendant's Initials _____      40

The defendant gave heroin and fentanyl to CI-1 on 20 to 30 occasions. CI-1 sold the heroin and fentanyl on behalf of the defendant, believing he/she was participating in legitimate law enforcement activities as a source. The defendant made approximately $40,000 from the sales of heroin and fentanyl in this manner. The defendant also gave cocaine to CI-1 to sell approximately 10 times.

In 2021, the defendant began selling marijuana and cocaine, which the defendant diverted and stole from law enforcement seizures, to a known DEA subject (Subject-1). The defendant gave marijuana to Subject-1 on 15 to 20 occasions for a total of 500 to 600 pounds of marijuana. The defendant received between $200 to $400 per pound of marijuana.

The defendant gave cocaine to Subject-1 on 2 to 3 occasions and received $800 to $1,000 per ounce of cocaine.

### ATTEMPTED SEIZURE AND DIVERSION OF FENTANYL

In mid to late 2022, the defendant learned from Subject-1 of six kilograms of fentanyl that had arrived from another state. Subject-1 and the defendant devised a plan to stage a Florida Highway Patrol traffic stop in order for the associate to portray to the source of the drugs that the kilograms were seized by law enforcement and therefore Subject-1 would not be able to sell the drugs. The defendant and co-defendant staged a fake traffic stop and

Defendant's Initials                 41

took photographs to indicate it was a legitimate traffic stop. The defendant
and co-defendant solicited the assistance of an unwitting law enforcement
officer as well. The defendant, co-defendant, and Subject-1 intended to sell the
fentanyl and keep the proceeds for their personal benefit. However, when the
kilograms were tested, they were revealed to be made of benzocaine rather
than fentanyl.

## POSSESSION OF NARCOTICS

On March 10, 2023, the defendant's residence in Callahan, Florida was
searched pursuant to a federal search warrant. His office at the Nassau
County Sheriff's Office was searched simultaneously. The search of the
defendant's residence yielded approximately 263 grams of a powdery
substance containing a detectable amount of fentanyl. In addition, the
powdery substances also contained detectable amounts of Xylazine and
Ketamine. Agents also recovered approximately 16 grams of cocaine and a
small amount of alpha-PVP (alpha-pyrrolidinopentiophenone), also known as
Flakka. These narcotics were located in a converted garage room on the
defendant's property which was labeled "Gator's Man Cave" which the
defendant regularly inhabited and used. All of these narcotics were intended
for distribution. The search of the defendant's office also yielded
approximately 260 grams of pills which were initially believed to contain

Defendant's Initials _____        42

MDMA, but which laboratory testing confirmed instead contained a detectable amount of methamphetamine. At the time he possessed the substances described above, the defendant was aware that they were illicit narcotics.

POSSESSION OF MACHINEGUN

During the search of the defendant's residence in Callahan, Florida, on March 10, 2023, a JMAC Customs M4 rifle was located in a gun safe. Due to the presence of narcotics seized at the defendant's residence and the markings on the rifle indicating it was capable of fully automatic firing, the rifle was seized.

On May 18, 2023, ATF tested the JMAC Customs M4 rifle and determined that the gun was capable of fully automatic fire and is a "machinegun" as defined in 26 U.S.C. § 5845(b). Additionally, the JMAC Customs M4 rifle bore no NFA manufacturer's marks of identification or serial number as required by 26 U.S.C. § 5842.

The JMAC Customs M4 rifle was constructed by an acquaintance of the defendant at the defendant's direction and using parts the defendant acquired. At the time of having the JMAC Customs M4 rifle constructed, the defendant was aware it was illegal to possess an automatic weapon or machinegun. At the time the defendant possessed the rifle, he was aware that

it was a machinegun. The rifle has never been registered to the defendant in the National Firearms Registration and Transfer Record, as required under federal law.

### POSSESSION OF STOLEN AND UNSERIALIZED FIREARMS

During the search of the defendant's residence in Callahan, Florida, on March 10, 2023, pursuant to a federal search warrant, three firearms were located (Smith & Wesson revolver, Masterpiece Arms handgun, and a Springfield Armory handgun) which were later identified as being previously seized during a DEA investigation on April 17, 2018. On April 17, 2018, the defendant authored a DEA Form 6 report related to the seized weapons, which stated the weapons were transported to Baker County Sheriff's Office (BCSO) by two other law enforcement officers.

On January 17, 2019, the defendant authored a DEA Form 6 report stating that the firearms were removed from BCSO on December 12, 2018, and custody was relinquished to the defendant. The defendant further stated he transported and submitted the weapons to the NCSO Property and Evidence room under a specific NCSO Agency Reporting Number. The defendant further reported he, and others, then transported the firearms to a contracted private facility, located in Okahumpka, FL, for a scheduled destruction appointment.

Defendant's Initials           44

On May 5, 2023, NCSO Evidence personnel searched the NCSO evidence system for the three firearms. The resulting search showed three different firearms being submitted under the specific NCSO Agency Reporting Number. A search of the serial numbers for the firearms found at Hickox's residence was negative. Based on this information, these firearms were never entered into NCSO evidence system by the defendant.

One of the firearms, the Smith & Wesson revolver, had obliterated serial numbers. Specifically, the serial numbers on both the bottom of the grip and the bottom of the barrel were drilled out and obliterated. The revolver was one of several firearms seized during the April 17, 2018, DEA search warrant, which the defendant had marked as destroyed and then diverted to his own possession. On an unknown date after the firearm was in the defendant's possession, the defendant drilled out and obliterated the serial numbers on the firearm.

During the search executed at the defendant's residence on March 10, 2023, a fourth firearm was located (also a Springfield Armory handgun), which was later identified as being previously seized during a DEA investigation on July 9, 2015. On July 10, 2015, the defendant authored a DEA Form 6 report stating the firearm was transported to DEA JDO on July 9, 2015, for temporary storage. The defendant further reported he transported

Defendant's Initials _DC_                45

the firearm to NCSO and placed the firearm in the NCSO Property and Evidence room on July 10, 2015.

On May 5, 2023, NCSO Property and Evidence records indicated the firearm was still in NCSO evidence. A search by NCSO determined the weapon was not located in evidence and there was no paperwork to document its disposal/removal.

### TAX EVASION

During his time as a DEA TFO and after returning to NCSO as a Sergeant, the defendant used his position to obtain access to cocaine, heroin, fentanyl, marijuana and other controlled substances which had been seized as evidence in law enforcement operations. The defendant provided the drugs to other individuals to sell on his behalf. The defendant collected cash proceeds from the sale of the controlled substances by these other individuals. The defendant also collected cash from his theft of seized currency.

On or about March 10, 2023, the defendant was in possession of approximately $195,036 at his residence. The cash was proceeds of the defendant's illicit activities. The defendant utilized the drug and theft proceeds to make significant cash payments on credit cards and also used cash to pay for personal expenditures including vehicles, home improvements, gifts, and other items. The defendant further deposited money obtained from his

Defendant's Initials                 46

participation in the drug conspiracy into bank accounts, including the accounts held at Vystar Credit Union and Wells Fargo Bank mentioned above in the Forfeiture Section. The amounts listed above in the Forfeiture Section represent the amount of drug proceeds still remaining in the accounts at the time the accounts were frozen by the referenced financial institutions.

The defendant knowingly failed to report as income the amounts he collected as cash proceeds from the thefts and the sales of the controlled substances including cocaine, heroin, fentanyl, marijuana, and other controlled substances. During 2020, 2021, and 2022, the defendant made cash deposits to bank accounts, cash payments to credit cards, and cash payments for goods and services of at least $127,859.61, $113,770.00, and $179,589.00, respectively. The cash payments were made using proceeds of the defendant's illicit activities.

The defendant and his spouse filed joint tax returns for tax years 2020, 2021, and 2022. The defendant was responsible for the preparation and filing of the joint tax returns. The defendant's 2020, 2021, and 2022 tax returns, prepared by tax preparers, based on information and documentation provided by the defendant, did not report at least $121,020.97, $113,701.11, and $178,968.20, respectively, which should have been reported as income for those years. The total unreported cash income totaled at least approximately

Defendant's Initials _____          47

$421,218.61. The unreported cash income resulted in a criminal tax loss of at least $28,339, $28,168, and $41,546 in 2020, 2021, and 2022, respectively. The total criminal tax loss is at least $98,053.

*Attachment A,*
*Page 1/2*

| Item # | Corrected Description |
|---|---|
| 1B31 | Smith & Wesson unknown model .32 caliber revolver, serial number illegible but believed to be 136365 |
| 1B37 | Glock GMBH model 19Gen5 9mm caliber pistol, serial number BUBY675, manufactured in Austria and imported by Glock, Inc., Smyrna, GA |
| 1B40 | Taurus model Public Defender Judge poly .45LC/.410GA caliber revolver, serial number KY351078, manufactured in Brazil and imported by Taurus International Manufacturing Inc., Miami, FL |
| 1B41 | Smith & Wesson model 637 Airweight .38 caliber revolver, serial number CJA5143 |
| 1B42 | Item 39: DEA Evidence bag with ammo |
| 1B43 | Item 40: 5 Rounds of .32 Caliber ammunition (smith and wesson) in zip lock bag that contained Smith and Wesson .32 caliber revolver and 5 rounds of .32 caliber smith and wesson ammuntion |
| 1B44 | Colt model Trooper MKIII .357 caliber revolver, serial number L19741, stainless steel |
| 1B45 | Taurus International model Curve .380 caliber pistol, serial number 49759E (manufactured in US) |
| 1B46 | Masterpiece Arms model MPA30 9mm caliber pistol, serial number F12725 |
| 1B47 | HS Produkt model XDM .40 caliber pistol, serial number MG104691, manufactured in Croatia and imported by Springfield Armory Inc., Geneseo, IL |
| 1B48 | Glock GBMH model 30Gen4 .45 caliber pistol, serial number XDL223, manufactured in Austria and imported by Glock Inc., Smyrna, GA |
| 1B49 | Ideal Conceal, Inc., model IC9MM 9mm caliber pistol, serial number X500095 |
| 1B50 | Bond Arms, Inc., model Rough N Rowdy .45/.410 caliber derringer, serial number 275774 |
| 1B51 | Magnum Research, Inc., model Micro Desert Eagle .380 caliber pistol, serial number ME12543 |
| 1B52 | Silencerco, LLC, model  Maxim 9 9mm caliber pistol, serial number MX9-1607 |
| 1B53 | Taurus model Public Defender Judge .45LC/.410GA caliber revolver, serial number E0382968, manufactured in Brazil and imported by Taurus International Manufacturing, Inc., Miami, FL |
| 1B54 | Glock GMBH model 27Gen4 .40 caliber pistol, serial number XDH955, manufactured in Austria and imported by Glock, Inc., Smyrna, GA |
| 1B55 | Colt model Frontier Scout .22 caliber revolver, serial number 98382F, single action |
| 1B56 | Israel Weapon Industries model Tavor Sar 7.62NATO caliber rifle, serial number T7600483, manufactured in Israel and imported by IWI US, Inc., Middletown, PA |
| 1B57 | Ruger model AR-556 556-caliber pistol, serial number 859-13601 |
| 1B58 | Manufacture Design Innovation, Inc., model M4 multi-caliber pistol with Palmetto State Armory rifle barrel, serial JMACX822 |
| 1B59 | PTR Industries, Inc., model PTR 91 .308 caliber pistol, serial number DK03846 |
| 1B60 | Glock GMBH model 22 .40 caliber pistol, serial number HUL637, in micro conversion kit, manufactured in Austria and imported by Glock, Inc., Smyrna, GA |
| 1B61 | Mossberg model 590 12-gauge shotgun, serial number MF0016574, with pistol grip |
| 1B62 | Panzer Arms model AR Twelve Pro 12-gauge shotgun, serial number MT-19-02933, manufactured in Turkey and imported by PW Arms, Inc., Redmond, WA |
| 1B63 | Winchester model 94 .30-30 caliber rifle, serial number 3328667 |
| 1B64 | HS Produkt model XDS .40 caliber pistol, serial number S3526589, manufactured in Croatia and imported by Springfield Armory, Inc., Geneseo, IL |
| 1B65 | Glock GMBH model 22Gen4 .40 caliber pistol, serial number WPM606, manufactured in Austria and imported by Glock, Inc., Smyrna, GA |
| 1B66 | Wilson Combat model Protector 5.56 caliber rifle, serial number WCA32349 |
| 1B67 | Armalite model M15 5.56 caliber rifle, serial number US155942 |
| 1B68 | Glock GMBH model 19Gen5 9mm caliber pistol, serial number BGNU707, manufactured in Austria and imported by Glock, Inc., Smyrna, GA |



Page 2/2

| | |
|---|---|
| 1B69 | Glock GMBH model 27 .40 caliber pistol, serial number DTD924US, manufactured in Austria and imported by Glock, Inc., Smyrna, GA |
| 1B163 | Item 2: 9 rounds of 9mm ammunition |
| 1B165 | Glock GMBH model 43x 9mm caliber pistol, serial number BALT450, manufactured in Austria and imported by Glock, Inc., Smyrna, GA |

